IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kristopher Wiggins and Billy Paul Cobb, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, <br><br> Defendants. | C/A No. 8:21-cv-03803-DCC <br><br><br><br><br> **OPINION AND ORDER** |

This matter is before the Court on Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company's Renewed Motion to Dismiss. ECF No. 44. Plaintiffs filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 48, 50. For the reasons set forth below, the Motion is denied.

## **BACKGROUND**

This case arises from an automobile insurance dispute in which Plaintiffs owned vehicles that were deemed a total loss by Defendants. *See* ECF No. 1-1 at 9. Defendants elected to pay Plaintiffs the actual cash value of their insured vehicles pursuant to their insurance policies. *Id.* at 10. Plaintiffs allege in the Complaint that Defendants employed a total loss settlement process, which involved obtaining a market-driven valuation report from Audatex North America, Inc. ("Audatex").[1] *Id.* To arrive at the valuation of the

---

[1] Defendants explain that the market value of Plaintiffs' vehicles were estimated using a valuation tool prepared by Audatex North America, Inc. ECF No. 1 at 2.

insured vehicles, the report provided the prices of four different comparable vehicles advertised for sale online and applied a "Typical Negotiation Adjustment" of approximately 6% to each one.  *Id.*  Using this method, Defendants valued Plaintiff Wiggins' total loss claim at $12,524.00 and Plaintiff Cobb's total loss claim at $12,194.00 and paid Plaintiffs those amounts as the actual cash values of their totaled vehicles.  *Id.* at 11.  Plaintiffs claim that Defendants' use of the "Typical Negotiation Adjustment" to adjust their total loss claims downward violates the applicable insurance policies, is factually erroneous, and was applied solely to pay Plaintiffs less than the actual cash value of their total loss vehicles to which they were entitled by contract.  *Id.*  As a result, Plaintiffs claim that without this erroneous adjustment, the actual cash value of their vehicles would have been $848 and $749 higher, respectively.  *Id.* at 13 & n.3–4.

On October 15, 2021, Plaintiffs filed a putative class action lawsuit against Defendants in the Oconee County Court of Common Pleas, alleging claims for breach of contract and for a declaratory judgment.  *Id.* at 16–21.  Defendants removed the action to this Court on November 19, 2021.  ECF No. 1.  Defendants sent a written request for appraisal of Plaintiffs' covered vehicles pursuant to their policies on December 21, 2021.  ECF No. 20-4 at 1, 5–6.  By letter dated the same day, Plaintiffs refused to participate in the appraisal process.  *Id.* at 8.  Thereafter, Defendants filed a Motion to Dismiss, or in the Alternative, Compel Appraisal and Stay.  ECF No. 20.  The Court held a hearing on the Motion on June 16, 2022, granted the Motion to Compel Appraisal and Stay, and denied the Motion to Dismiss with leave to refile within 30 days after the completion of the appraisal process.  ECF Nos. 40, 41.

Pursuant to the Court's June 23, 2022, Order, the parties completed the appraisal process on September 21, 2022, which determined the actual cash value of Plaintiff Wiggins's vehicle to be $13,346.75 and Plaintiff Cobb's vehicle to be $12,943.00. ECF Nos. 42, 42-1, 42-2. Defendants assert, and Plaintiffs acknowledge, that they paid Plaintiffs the difference between the appraisal awards and the total loss payments previously paid. ECF Nos. 44-1 at 1–2; 48 at 7. On October 21, 2022, Defendants filed a Renewed Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. ECF No. 44. Plaintiffs filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 48, 50. The Motion is now before the Court.

## **APPLICABLE LAW**

### I. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be raised at any time by a party or the court. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In deciding the motion, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intelligence Agency*, 42 F.4th 428, 433 (4th Cir. 2022) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). "[W]hen the

jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

"Issues of mootness are properly the subject of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction as the doctrine 'constitutes a part of the constitutional limits of federal court jurisdiction.'" *Carmen's Corner Store v. Small Bus. Admin.*, 520 F. Supp. 3d 726, 730 (D. Md. 2021) (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citations omitted), or when the court's "resolution of an issue could not possibly have any practical effect on the outcome of the matter," *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010).

**II. Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of

all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  However, while the Court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Id*.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## **DISCUSSION**

Defendants renew their request to dismiss Plaintiffs' Complaint, alleging that the Court lacks subject matter jurisdiction under Rule 12(b)(1) because Plaintiffs' claims have become moot now that the appraisal process has been completed and Defendants have paid Plaintiffs the difference between the appraisal awards and the total loss payments previously paid.  ECF No. 44-1 at 9–11.  Alternatively, Defendants request dismissal pursuant to Rule 12(b)(6) because Plaintiffs have failed to sufficiently allege that Defendants breached the insurance policies by paying less than the actual cash value of Plaintiffs' totaled vehicles through use of the "Typical Negotiation Adjustment" in the total loss settlement process.  *Id.* at 11–15.

5

In contrast, Plaintiffs argue dismissal under Rule 12(b)(1) is inappropriate because the jurisdictional facts are inextricably intertwined with the facts central to the merits of Plaintiffs' claims. ECF No. 48 at 17–18. Plaintiffs contend that the appraisal process only showed that Defendants undervalued their totaled vehicles and did not determine whether Defendants' application of the "Typical Negotiation Adjustment" in the total loss settlement process breached the terms of the insurance policies. *Id.* at 22. Moreover, Plaintiffs assert that they have sufficiently stated a claim to avoid dismissal under Rule 12(b)(6) for breach of contract and for a declaratory judgment. *Id.* at 27–33. Specifically, Plaintiffs allege that Defendants paid significantly less than the actual cash value of their total loss claims through use of the "Typical Negotiation Adjustment" based on their assumptions about the used-car market, which constituted a breach of Defendants' obligation under the insurance policies to pay the actual cash value of Plaintiffs' covered vehicles. *Id.* at 28.

Having reviewed the arguments and submissions of the parties, the Court finds that Defendants' payment to Plaintiffs of the difference between the appraisal awards and the total loss payments previously paid does not moot Plaintiffs' claims and divest this Court of subject matter jurisdiction. Defendants misconstrue Plaintiffs' claims to allege that Plaintiffs simply were not paid the full actual cash value to which they were entitled under the policies, and now that Plaintiffs have been paid the full amounts, there is no live claim or controversy left for the Court to decide. Instead, Plaintiffs assert that Defendants breached the terms of the insurance policies through use of the "Typical Negotiation Adjustment," which lowered the actual cash value of Plaintiffs' covered vehicles, resulting in a reduction in the payment of their total loss claims. *See, e.g.*,

*McGowan v. Progressive Preferred Ins. Co.*, 637 S.E.2d 27, 29 (Ga. 2006) (holding the plaintiff's breach of contract claim involved more than just the actual cash value of her car and that the appraisal process, which simply addressed the issue of value, did not render the breach of contract issue moot). The appraisal process did not answer the question of breach with respect to the propriety of Defendants' use of the adjustment in the process of settling total loss claims under the insurance policies. Instead, the insurance policies conferred on the appraisers only the right to determine the actual cash value of the covered vehicles. *See* ECF No. 20-2 at 13; 20-3 at 13 ("The appraisers shall only determine the actual cash value of the ***covered vehicle***."). As stated in the Court's June 23, 2022, Order, the appraisal provision in the insurance policies applied only to disputes regarding the actual cash value of a covered vehicle and was not an agreement for arbitration, as it did not encompass the disposition of the entire controversy between the parties, but instead extended merely to the resolution of the issue of actual cash value and the amount of loss. ECF No. 41 at 7–8. Thus, the issue regarding Defendants' alleged breach of the insurance policies through use of the "Typical Negotiation Adjustment" remains even after the appraisal process has concluded. *Id.* at 8; *see also McGowan*, 637 S.E.2d at 29 ("To invoke an appraisal clause to eliminate the larger issues of liability . . . would be impermissible, as it would expand the scope of the appraisal clause beyond the issue of value. It would be tantamount to converting the appraisal clause into an arbitration clause, which is the type of clause that would be invoked to address such broader issues."). Accordingly, Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is denied.

The Court further finds that Plaintiffs have sufficiently stated claims for breach of contract to avoid dismissal under Rule 12(b)(6). "To recover for a breach of contract, the party asserting the claim must allege and prove: 1) a binding contract entered into by the parties; 2) breach or unjustifiable failure to perform the contract; and 3) damage suffered by the claiming party as a direct and proximate result of the breach." *Davies v. WTD Holdings, Inc.*, C.A. No. 3:19-cv-02122-JMC, 2020 WL 1703895, at *2 (D.S.C. Apr. 8, 2020). The parties do not dispute the existence of a binding contract. As to breach, Plaintiffs allege that when Defendants elected to settle their total loss claims by paying the actual cash value of their covered vehicles, Defendants were required to consider the vehicles' fair market value at the time of loss. Instead, Plaintiffs contend Defendants improperly used "Typical Negotiation Adjustments" provided by Audatex in their market-driven valuation reports to handle, adjust, and pay Plaintiffs' total loss claims for less than the actual cash value required by the insurance policies. *See, e.g., Smith v. S. Farm. Bureau Casualty Ins. Co.*, 18 F.4th 976, 980–81 (8th Cir. 2021) (holding the plaintiff stated a plausible claim for breach of contract in alleging that the defendant had considered an artificially lower value of the used vehicle rather than fair market value by using a 9% "Projected Sold Adjustment" in the total loss settlement process). Consequently, Plaintiffs argue Defendants breached their duty under the insurance policies, resulting in a reduction in the payment of their total loss claims. *See id.* at 981 n.3 (noting the defendant's "duty was to consider the fair market value, and using anything other than fair market value would be a breach"). Accepting Plaintiffs' allegations as true, the Court finds Plaintiffs have stated a plausible claim for relief. While the actual cash values of Plaintiffs' vehicles have purportedly been satisfied by Defendants' payment following

appraisal, there are ostensible damages which flow from Defendants' alleged breach of contract, such as the expenses Plaintiffs incurred by not having use of their vehicles and those incurred by being forced to hire an appraiser to show that their vehicles were being undervalued. *See McGowan*, 637 S.E.2d at 29 ("The damages naturally flowing from this alleged . . . breach of contract included the value of Walker's car, the expense that Walker incurred by not having use of a car, and the expense that Walker incurred by being forced to hire an appraiser to show that her car was being undervalued."). Accordingly, Defendants' Motion to Dismiss for failure to state a claim under Rule 12(b)(6) is denied as to these claims.

Moreover, Plaintiffs have sufficiently stated claims for a declaratory judgment, at this stage of the litigation, that Defendants' use of the "Typical Negotiation Adjustment" in the total loss settlement process breached the terms of the insurance policies requiring them to pay Plaintiffs the actual cash value of their covered vehicles. Indeed, as discussed above, Plaintiffs have alleged facts showing a substantial controversy between the parties. *See Brown-Thomas v. Hynie*, 412 F.Supp.3d 600, 606 (D.S.C. Sept. 12, 2019) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *id.* ("Generally speaking, however, a motion to dismiss is rarely appropriate in a declaratory judgment action." (citing *Palmer v. Audi of Am., Inc.*, 2015 WL 2221727, at *2 (D. Md. Jan. 13, 2015)). Accordingly, Defendants' Motion to Dismiss for failure to state a claim under Rule 12(b)(6) is also denied as to these claims.

## **CONCLUSION**

For the reasons set forth above, Defendants' Renewed Motion to Dismiss [44] is **DENIED**.

IT IS SO ORDERED.

                                                             s/ Donald C. Coggins, Jr.
                                                             United States District Judge

July 26, 2023
Spartanburg, South Carolina